## In re CALIFORNIA PEA PRODUCTS, Inc.

### No. 32615–C.

District Court, S. D. California, Central Division.

Feb. 19, 1941.

Leslie S. Bowden and James E. Bednar, both of Los Angeles, Cal., for L. Boteler, trustee.

Earl Warren, Atty. Gen., and Albert R. Belford, Deputy Atty. Gen., for the State Board of Equalization of California.

McCORMICK, District Judge.

On November 28, 1938, after unsuccessful proceedings for corporate reorganization under former Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, California Pea Products, Inc., was adjudged bankrupt, and administration under the ordinary processes in bankruptcy have been conducted by and before Referee Ben E. Tarver.

Upon petition of the trustee in bankruptcy, an order was issued and directed by the referee to the State Board of Equalization of California, requiring the Board and its members to appear and show cause before the referee why an order should not be made restraining the members of such State Board, its agents, etc., from in any manner enforcing the provisions of Act 8493 of the General Laws of the State of California 1937 against the trustee of the bankrupt estate.

Appearances were made and hearing was had before the referee, and on March 22, 1940, the referee issued an order of "permanent injunction" restraining the State Board of Equalization "from in any manner enforcing or attempting to enforce any of the provisions of Act 8493 of the General Laws of the State of California, against the trustee herein, L. Boteler, Esquire, his agents, servants or employees, or from in any manner interfering with the administration of this estate."

The State Board of Equalization has petitioned for review of such order.

Act 8493 is also titled "Retail Sales Tax Act of 1933" of the State of California. Briefly stated, it is a comprehensive legislative scheme of the State, imposing and collecting a tax of 3% upon the gross receipts of retailer for the privilege of selling tangible personal property at retail, and providing for permits to retailers to engage in the business of selling such property, and prescribing penalties for violation of its provisions. The Act describes the entities which are subject to its provisions, but it does not specify a trustee in bankruptcy as one in such classification, and taxation by implication is not favored. Reinecke v. Gardner, 277 U.S. 239, 48 S. Ct. 472, 72 L.Ed. 866; In re Messenger's Merchants Lunch Rooms, 7 Cir., 85 F.2d 1002.

The referee from the evidence at the hearing before him held that the trustee in bankruptcy is not one of the persons mentioned in the Act as being engaged in the business of selling tangible personal property and therefore is not required to secure a permit to sell in liquidation activities any property of the bankrupt estate, or required to collect any sales tax on any property sold by him as trustee in liquidation of this bankrupt estate; that such trustee is under the record not subject to the control or jurisdiction of the California State Board of Equalization; that such Board is threatening to enforce the provisions of Act 8493 against such trustee and to require him to obtain a license and otherwise comply with the provisions of such State act.

The referee's order and injunction are attacked solely upon two grounds: (1) That said trustee in bankruptcy, L. Boteler, was selling on behalf of the bankrupt California Pea Products, Inc., machinery and equipment at retail within the contemplation of the California Retail Sales Tax Act, and (2) that an injunction against the State Board of Equalization will not lie for the reason that the said trustee in bankruptcy has under the California Retail Sales Tax Act an adequate remedy at law by paying the tax and suing to recover.

Preliminarily, it is pertinent to observe that the petition for review originally contained a statement that the State Board of Equalization had filed in this bankruptcy matter its claim for sales tax due the State of California, and a part of the prayer of the petitioner on review was that this court on the review overrule any objections to said claim of the State Board of Equalization and allow said claim in full. By interlineations appearing upon the original petition for review, the aforesaid matters are stricken and are therefore not now a part of this review. It thus does not appear that the State Board of Equalization has filed any claim for retail sales tax or in fact for any other tax in this bankruptcy proceeding, or that any extension has been granted for the filing of any such tax claims.

In view of such situation, it is unnecessary on this review to go farther than to determine the validity and proper scope of the injunctive order issued by the referee. And until a claim for taxes is filed in this bankruptcy proceeding by the State authorities, or until a "bar order" is operative upon the State agency, the question as to whether the trustee in bankruptcy in selling tangible personal property in liquidation of

the bankrupt estate is a retailer and a person obligated to comply with the provisions of Act 8493 of the General Laws of the State of California, is not properly before us. See New York v. Irving Trust Co., 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815; 6 Remington on Bankruptcy, 4th Ed., Section 2844.50.

 It is, however, clear from the documentary evidence sent up with the referee's certificate that the State Board of Equalization had determined that the trustee was "engaged in the business of selling tangible personal property, the receipts from the retail sale of which are subject to the sales tax," and that such trustee was "required by the California Retail Sales Tax Act" to secure a permit under the Act. Accordingly, demand was made by the State Board for the permit fee provided in the Act, and also that the trustee file quarterly returns in accordance with the Act under a likelihood or implied threat of being penalized for non-compliance with the demands of the State Board, and possibly of being sued in the state court for non-payment of taxes, or at least of encountering some interference by the State Board in the administration of this bankrupt estate. The probability of such an eventuality justified the referee in making an appropriate stay order. Section 2, sub. a (15), Chandler Act, 11 U.S.C.A. § 11, sub. a (15). The possession of the property by the trustee is the court's possession, and any act interfering with the court's power of control and disposal and done without the court's sanction is void. Dayton v. Stanard, 241 U.S. 588, 36 S.Ct. 695, 60 L.Ed. 1190.

The record shows that the trustee was not authorized by the bankruptcy court to conduct business under the permissive provisions of the bankruptcy act. Section 2, sub. a (5), 11 U.S.C.A. § 11, sub. a (5). In fact, no application of any kind was made to carry on or to conduct business. On the contrary, all of the selling activities of the trustee in bankruptcy were purely liquidating functions and in no proper sense should be considered in any other category. This factual difference distinguishes such cases as City of Springfield v. Hotel Charles, 1 Cir., 84 F.2d 589, and In re Chas. Nelson Co., D.C., 27 F.Supp. 673. It also illustrates the inapplicability of Section 124a of Title 28, U.S.C.A. to the transactions of the trustee in bankruptcy under consideration.

The adjudication was ordered under Section 236 of the Bankruptcy Act, 11 U.S.C.A. § 636, and the functions of the trustee in relation to the questioned sales were those, and only those, prescribed in Section 238 of the Bankruptcy Act, 11 U.S.C.A. § 638. In exercising such functions the trustee does not in the ordinary meaning of the term "conduct any business." Under the court's direction he is merely converting the assets of the bankrupt estate into a distributable form in order to comply with the bankruptcy act.

Our Circuit Court of Appeals in the recent decision of Urban Properties Corporation v. Benson, Inc., 9 Cir., 116 F.2d 321, 323, has definitely and in no uncertain terms established the rule whereby it may be ascertained whether or not a trustee in bankruptcy has the power to operate a business. Speaking through Judge Denman, the Court said: "No trustee has the power to operate the business of the debtor until 'authorized' to do so by the order of the court."

The transactions which are carried on by the trustee and which the state taxing authorities seek to classify as "business" by a "retailer" have been from the evidence before the referee found by him to have been purely liquidating activities. The commodities sold by the trustee are the machinery and equipment formerly used in the business of the bankrupt company but which have not been used in any way by the trustee in bankruptcy and possession and sale of which by the trustee has been solely for the preservation of the property of the estate and its ordinary administration in liquidation and distribution in bankruptcy.

 By Section 64, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a, the referee is vested with authority to hear and determine any question which arises in the bankruptcy proceeding as to the amount or legality of any taxes which are claimed or asserted against the bankrupt, and this broad power of the referee is not to be confined to cases where some other method does not exist for determining the legality or validity of a tax. In re Florence Commercial Co., 9 Cir., 19 F.2d 468; In re Seaver-Howland Press, Inc., Bankrupt, 16 A.B.R.,N.S., 227.

 The tax claims referred to in Sections 57, sub. n, and 64, sub. a, 11 U.S.C.A. §§ 93, sub. n, and 104, sub. a, may be regarded as relating to matters and activities

which have occurred prior to the filing of the petition in bankruptcy. The transactions upon which the State bases its contention in this review have all taken place after adjudication and the selection of the trustee in bankruptcy. The claims may therefore be considered as not strictly "claims" against the estate within the contemplation of Sections 57, sub. n and 64, sub. a, but rather an expense of administration provided for in Section 62 of the Act, 11 U.S.C.A. § 102. But the same power of adjudicating such "claims" is vested in the bankruptcy court by Section 62 as in the matter of tax claims under Sections 57, sub. n and 64, sub. a.

■ The Supreme Court in Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 346, 84 L.Ed. 370, speaking of the broad and plenary power of courts of bankruptcy, said: "The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit the jurisdiction which courts, State or Federal, can exercise over the person or property of a debtor who duly invokes the bankruptcy law." See, also, Arkansas Corporation Commission v. Thompson, 8 Cir., 116 F.2d 179.

■ When a general reference has been made by the judge to a referee, as in this matter, he is, under the Chandler amendments to the bankruptcy act and under new General Order 12, 11 U.S.C.A. following section 53, invested with complete jurisdiction of the proceedings, and the referee under such reference can do everything that the district judge can do, except certain specific powers which are reserved to the judge, but which are immaterial to this review or to the acts of the referee under consideration in this matter, under the factual situation shown by the record before us. See In re Munson, D.C., 11 F.Supp. 564, 30 A.B.R.,N.S., 139.

We think, however, that the injunction and order under review is too broad. Mention has earlier been made of the modified and restricted scope of this review as shown by the interlineations on the petition for review, and although the briefs of the attorneys seem to assume that the record before us is sufficient and adequate to support a ruling determinative of a specific tax claim by the State Board, no such claim has in fact been presented. There is, therefore, no basis for an injunction which so operates to preclude the State Board

from presenting and filing a claim and having the same heard, considered and allowed or rejected by the referee as the situation may warrant.

■ Section 2, sub. a (15), of the bankruptcy act empowered the referee to "make such orders, issue such process, and enter such judgments, * * * as may be necessary for the enforcement of the provisions of this act: provided, however, that an injunction to restrain a court may be issued by the judge only." This statute, as well as General Order 12, effective February 13, 1939, is a rule of procedure relating to the remedy, and is applicable to this bankruptcy matter and, particularly, to the injunction herein which was issued March 22, 1940. And in arriving at the extent of power that is conferred upon the referee by Section 2, sub. a (15), the concluding clause of the subsection is a clear investiture in the referee under a general reference to issue all injunctions in the course of the bankruptcy proceeding necessary to prevent the defeat or impairment of his jurisdiction except that only a judge can enjoin a court. It would have been a simple matter for Congress to have made the prohibition against the referee's power to issue injunctions general if such had been the legislative intent. As no such intent appears but, on the contrary, only a single specific prohibition being shown, the referee is in all other instances vested with plenary judicial power to issue stay orders when acting under a general reference. See Collier on Bankruptcy, 14th Ed., Vol. I, page 277.

■ We conclude by holding that the findings, injunction and order of the referee, dated March 22, 1940, are modified as follows: The State Board of Equalization of the State of California, its officers, agents, employees and attorneys are and each of them is enjoined and restrained from in any manner enforcing or attempting to enforce any claim, tax, assessment, collection, penalties or sanctions provided in or pursuant to Act 8493 of the General Laws of the State of California against the estate of California Pea Products, Inc., a corporation, bankrupt, or against the trustee thereof, or against L. Boteler personally, or against any property of said bankrupt, or of L. Boteler, or from in any manner interfering with the administration of this estate, without prejudice, however, to the presentation and filing of any claim for taxes by the State Board of Equaliza-

tion of the State of California, its accredited and authorized officers, agents or attorneys, within the time allowed by law, and to having such claim considered by the referee and its legality and validity determined by him, or without prejudice to a "bar order" of the referee.

This matter and proceeding and the entire record before us are returned to Referee in Bankruptcy Ben E. Tarver with instructions to proceed with further proceedings in accordance with this order and in conformity to the Bankruptcy Act.