**In re SERVICE MERCHANDISE COMPANY, INC., et al.,
Debtors.**

**H.J. Wilson Company, Inc., Plaintiff,**

**v.**

**Commissioner of Revenue for the Commonwealth of Massachusetts, Defendant.**

**Bankruptcy No. 399–02649.
Adversary No. 300–0327A.**

United States Bankruptcy Court,
M.D. Tennessee,
Nashville Division.

Feb. 9, 2001.

John Wm. Butler, Jr., Charles F. Smith, Skadden, Arps, Slate Meagher & Flom, Chicago, IL, for the plaintiff.

Jeffrey S. Ogilvie, Litigation Bureau, Massachusetts Department of Revenue, Boston, MA, for the defendant.

*ORDER DENYING (1) DEFENDANT'S MOTION TO DISMISS, (2) MOTION OF DEFENDANT FOR DETERMINATION THAT THIS ADVERSARY PROCEEDING IS NOT A CORE PROCEEDING, AND (3) MOTION OF DEFENDANT FOR MANDATORY ABSTENTION OR, IN THE ALTERNATIVE, FOR DISCRETIONARY ABSTENTION*

GEORGE C. PAINE, II, Chief Judge.

This matter came to be heard upon (i) the Defendant's Motion to Dismiss (docket number 7) (the "Dismissal Motion"), filed by the Commissioner of Revenue for the Commonwealth of Massachusetts ("Defendant"), (ii) the Motion of Defendant for Determination that this Adversary Proceeding is not a Core Proceeding (docket number 21) (the "Core Proceeding Motion"), (iii) the Motion of Defendant for Mandatory Abstention or, in the Alternative, for Discretionary Abstention (docket number 22) (the "Abstention Motion"; collectively with the Dismissed Motion and the Core Proceeding Motion, the "Motions"), (iv) the Defendant's Memoranda in support of the Motions (docket numbers 8 and 23) (collectively, the "Defendant's Memoranda"); (v) the response in opposition to the Motions (docket number 26) (the "Response"), filed by the Plaintiff, H.J. Wilson Company, Inc. ("H.J. Wilson" or the "Debtor"), debtor and debtor-in-possession in the above-captioned cases; and (vi) the reply to the Response (docket number 27) (the "Reply"), filed by the Defendant. The Court having reviewed and considered the Motions, the Defendant's Memoranda, the Response, the Reply and other papers filed in these cases related to this adversary proceeding, and having heard and considered argument of counsel at the hearing on the Motions held on January 23, 2001, and being otherwise sufficiently advised,

THEREFORE, THE COURT HEREBY FINDS AND CONCLUDES:

a. On March 27, 1999, the Debtor filed a voluntary petition in this Court for reorganization relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330 (the "Bankruptcy Code"), thereby commencing a case under the Bankruptcy Code (the "Bankruptcy Case"). Thereafter, the Debtor commenced this adversary proceeding in the Bankruptcy Case, requesting a determination of tax liability under section 505 of the Bankruptcy Code, and further requesting a refund of taxes paid by the Debtor to the Defendant for which the Debtor is found not to be liable.

*Sovereign Immunity*

b. In the Dismissal Motion, the Defendant asserts that the Debtor may not maintain this adversary proceeding because the Defendant retains sovereign immunity from such an action under the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted, against one of the United States by Citizens of another State, or by Citizens of subjects of any foreign State." U.S. Const. Amend. XI.

c. A number of lower courts have examined, with diverging opinions, whether section 106(a) of the Bankruptcy Code, which provides that "sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section," is unconstitutional in light of the decision by the United States Supreme Court in *Seminole Tribe of Florida v. Florida,* 517 U.S.

44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). However, no federal Circuit Court of Appeals has ruled that section 106(a) is constitutional in light of *Seminole.* This Court is persuaded by the reasoning of the courts in *Bliemeister v. Indus. Comm'n of Ariz. (In re Bliemeister),* 251 B.R. 383 (Bankr.D.Ariz.2000) and *Nelson v. State of Wisconsin (In re Nelson),* 254 B.R. 436 (Bankr.W.D.Wis.2000).

■ d. The concept of sovereign immunity arises out of the sovereign status of each state in the federal system, and "[i]t is inherent in the nature of sovereignty not to be amenable to suit of any individual without consent." *Seminole,* 116 S.Ct. at 1122 (quoting A. Hamilton, *The Federalist Papers,* No. 81, at 487 (C. Rossiter ed.1961) (hereinafter cited as "*Federalist,* No. —, at ——")). Sovereign immunity, however, does not prevent a suit against a state if (1) the state has waived immunity, or (2) Congress has abrogated immunity by an unequivocal expression of intent to do so and does so pursuant to a valid exercise of the power. *Nelson,* 254 at 440.

■ e. The states, including the Defendant, have no sovereign immunity in the context of bankruptcies. *Nelson,* 254 B.R. at 446 (examining sovereign immunity in the context of a dischargeability action); *Bliemeister,* 251 B.R. at 391. Accordingly, there is no issue whether such immunity has been waived or abrogated. *Nelson,* 254 B.R. at 446; *Bliemeister,* 251 B.R. at 391.

f. The Eleventh Amendment must be read broadly not to stand "so much for what it says but more for the presupposition that it confirms." *Seminole,* 116 S.Ct. at 1122. This presupposition underlying the Eleventh Amendment protection is two-fold: (1) the states are sovereign in the federal system; and (2) a sovereign state cannot be subject to suit without its consent. *See Seminole,* 116 S.Ct. at 1122; *Nelson,* 254 B.R. at 440.

■ g. If the Eleventh Amendment acted to preserve existing sovereign immunity in the context of bankruptcies, then it would be impossible for Congress to abrogate that immunity when enacting bankruptcy laws pursuant to the earlier adopted bankruptcy power granted in section 8 of Article I of the Constitution. *Nelson,* 254 B.R. at 443. However, if the plan of the Constitution itself abrogated immunity in a particular area, then there is no immunity in such area for the Eleventh Amendment to protect, for the Eleventh Amendment does not act restore the states to their pre-ratification sovereign status. *Id.* at 443. In other words, a state's decision to ratify the Constitution and be admitted into the Union places that state upon "an equal footing" with other states in surrendering preexisting rights. *Id.*

h. The area of bankruptcy law "is indeed an area in which there was a surrender of sovereign immunity in the plan of [Constitution]." *Nelson,* 254 B.R. at 443; *see also, Bliemeister,* 251 B.R. at 383. The Supreme Court has relied on Alexander Hamilton's analysis in The Federalist Papers as authoritative on the subject of the Constitution and its adoption. *See Seminole,* 116 S.Ct. at 1119. Citing the power to establish uniform laws on naturalization as an example where the states completely surrendered sovereignty in the plan of the Constitution, Alexander Hamilton explained, that "the power 'to establish a UNIFORM RULE on naturalization throughout the United States[,' must] necessarily be exclusive; because if each State had the power to prescribe a DISTINCT RULE, there would be no UNIFORM RULE." *Federalist,* No. 32, at 199; *see*

*also, Nelson,* 254 B.R. at 443–444 (quoting and relying on *Federalist,* No. 32, at 199).

i. "The same clause that grants Congress exclusive power over matters of immigration and naturalization gives similar authority over bankruptcy." *Nelson,* 254 B.R. at 444. Clearly, the issue of debtor-creditor rights is a sensitive issue, as this nation was founded largely by debtors. In that light, the framers chose to make issues of bankruptcy uniform, thereby rendering state sovereignty resigned as of ratification by each state.

■ j. Accordingly, like the courts in *Nelson* and *Bliemeister,* this Court concludes that each state surrendered its sovereign immunity on matters of bankruptcy upon joining the Union "upon equal footing with the other states." *Nelson,* 254 B.R. at 447 (quoting *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 2247, 2251, 144 L.Ed.2d 636 (1999)); *see also Bliemeister,* 251 B.R. at 383. There is no immunity to be claimed in the context of bankruptcies under the Eleventh Amendment and, hence, no issue whether such immunity can be or must be waived or abrogated for a suit against a state to proceed. *Nelson,* 254 B.R. at 446; *Bliemeister,* 251 B.R. at 391. Therefore, this Court has jurisdiction over this adversary proceeding brought against the Defendant under section 505 of the Bankruptcy Code.

### Core Proceeding and Abstention

k. The Defendant filed the Core Proceeding Motion and the Abstention Motion requesting alternative relief in the event this Court finds that the Defendant was not entitled to the protection of sovereign immunity under the Eleventh Amendment. By the Core Proceeding Motion and the Abstention Motion, the Defendant seeks a finding that this adversary proceeding is not a core proceeding under section 157 of the United States Judicial Code, 28 U.S.C.

§§ 1–4001 (the "Judicial Code") and requests that this Court abstain from hearing and determining the issues in this adversary proceeding pursuant to section 1334 of the Judicial Code.

1. Section 1334 of the Judicial Code provides the statutory grant of jurisdiction for bankruptcy cases. It provides in relevant part: "[T]he district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Thus, this section provides for federal jurisdiction in three types of proceedings: (i) those that arise under title 11 of the United States Code (the "Bankruptcy Code" or "title 11"); (ii) those that arise in a case under the Bankruptcy Code; and (iii) those related to a case under the Bankruptcy Code. *Drexel Burnham Lambert Group v. Vigilant Insurance Company,* 130 B.R. 405 (S.D.N.Y.1991).

■ m. An action "arises under" the Bankruptcy Code if the relief sought is based upon a right specifically created by the Bankruptcy Code. *See Cain Partnership Ltd. v. Pioneer Investment Services Company (In re Pioneer Investment Services Company),* 946 F.2d 445, 449 (6th Cir.1991); *176–60 Union Turnpike, Inc. v. Howard Beach Fitness Center,* Inc., 209 B.R. 307, 311 (S.D.N.Y.1997). An claim "arises in" a case under the Bankruptcy Code if, by its very nature, the claim can only be brought in such a bankruptcy case and does not exist outside such bankruptcy case. *Pioneer Investment,* 946 F.2d at 449. "Related to" proceedings are those that could have been brought in a state court had there been no bankruptcy case filed under the Bankruptcy Code. *Id.; see also* 28 U.S.C. § 157(c).

n. Section 157 of the Judicial Code distinguishes between core and non-core proceedings. Pursuant to Section 157(b)(1), a

bankruptcy court has jurisdiction to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section [157 of the Judicial Code], and may enter appropriate orders and judgments, subject to review under section 158 of [the Judicial Code]." This section gives bankruptcy judges authority to enter final orders in core proceedings.

o. On the other hand, a bankruptcy court's jurisdiction and authority are more circumscribed in the context of non-core proceedings. Section 157(c)(1) of the Judicial Code does not permit a bankruptcy court to enter a final order as to a non-core proceeding, but states that the bankruptcy court is to "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions." Notwithstanding this limitation, section 157(c)(2) of the Judicial Code permits a bankruptcy court to hear and determine non-core proceedings if the parties consent. *Pioneer Investment Services*, 946 F.2d at 449.

■ p. The courts have repeatedly held that the determination of a debtor's tax liability under section 505(a) of the Bankruptcy Code is a core proceeding. *U.S. v. Wilson*, 974 F.2d 514, 517 (4th Cir.1992); *Holywell Corp. v. The Bank of New York (In re Holywell Corp.)*, 177 B.R. 991 (S.D.Fla.1995); *Gennari v. U.S. Department of Treasury (In re Educators Investment Corp.)*, 59 B.R. 910, 913 (Bankr.D.Nev.1986); *Lipetzky v. Dept. of Revenue of the State of Montana (In re Lipetzky)*, 64 B.R. 431, 434 (Bankr. D.Mont.1986). Likewise, this adversary proceeding is a core proceeding. Moreover, mandatory abstention pursuant to

section 1334(c)(2) of the Judicial Code is not required.

■ q. Even if this adversary proceeding were not a core proceeding, abstention and remand is not appropriate in this case. Section 1334(c)(1) of the Judicial Code provides for permissive abstention: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11, or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

r. This Court adopts and incorporates by reference herein, the reasoning of the Court in *In re Nana's Petroleum, Inc.*:

[T]his Court's § 505 determination in the instant Adversary Proceeding will not offend the principles of comity and respect for state adjudication, and so the Court will not abstain from making it. The Court also finds support for not abstaining from making the § 505 determination in the language of § 106(a) and § 505 itself. Section 106(a) states that "sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to," *inter alia*, § 505. Section 106(b), which this [the Bankruptcy Court for the Southern District of Florida] has already declared constitutional sets forth the extent to which the governmental unit waives sovereign immunity. Pursuant to §§ 106(a) and (b), a court may make a § 505 determination with respect to a governmental unit that has filed a proof of claim. Section 505(a)(1) authorizes a bankruptcy court to "determine the amount or legality of any tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of

competent jurisdiction." Section 505(a)(2), though, prohibits a bankruptcy court from making such a determination if the amount or legality of a tax "was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction *before commencement of the case under this title* [.]" Because no judicial or administrative tribunal determined the amount and legality of the tax liens underlying Tax Collector's claim before the commencement of Plaintiff's Bankruptcy Case, the Court finds that pursuant to 11 U.S.C. §§ 106 and 505, this court may now make that determination.

234 B.R. 838, 848 (Bankr.S.D.Fla.1999) (emphasis in original). Likewise, this Court's determination of the issues under section 505 of the Bankruptcy Code in the instant adversary proceeding will not offend the principles of comity and respect for State adjudication.

■ s. Courts in this district have looked at several factors to determine whether permissive abstention is appropriate: (1) the affect and lack thereof of the efficient administration of the estate if the court recommends abstention; (2) the extent to which state law issued predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334 of the Judicial Code; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance, rather than the form, of an asserted core proceeding; (8) the feasibility of severing state law claims from core proceeding matters to allow judgments to be entered in the state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood

that the commencement of the proceedings in bankruptcy court involves form shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties. *Refrigerant Reclamation Corp. of America v. Todack (In re Refrigerant Reclamation Corp. of America)*, 186 B.R. 78, 84 (Bankr.M.D.Tenn.1995).

t. The court finds that, based on all of these factors, it is appropriate for this Court to maintain jurisdiction of this adversary proceeding, to make a determination as to the issues and claims therein, and to make such a determination as expeditiously as possible. The Court notes that, *inter alia*, the determination of the issues and claims in this adversary proceeding arises the context of the Debtors' Bankruptcy Case, which is one part of a large and complex series of administratively consolidated bankruptcy cases for the Debtor and 31 of its affiliates. There is a need for finality and quickness in resolving the issues connected with these bankruptcy cases.

u. Therefore, for all of the foregoing reasons, the Court finds that (i) sovereign immunity does not apply and (ii) this Court should not abstain from hearing and determining the issues in this adversary proceeding.

IT IS THEREFORE HEREBY ORDERED, ADJUDGED AND DECREED:

1. The *Motions* are denied in their entirety for the reasons stated herein and by the Court on the record.

2. The Defendant shall obtain local counsel within ten (10) days after the entry of this Order.

3. Provided local counsel appears for the Defendant, non-local counsel may appear by telephone at the next pretrial conference, which is currently set for 9:30

a.m., prevailing Central Time, February 27, 2001.